IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

GEORGE R. GRANT, LOIS A. GRANT,  §
and GRANT FAMILY TRUST,          §
                                 §
            Plaintiffs,          §
                                 §
v.                               §    CIVIL ACTION NO. H-09-3964
                                 §
DAVID ASKANASE, TRUSTEE,         §
                                 §
            Defendant.           §

**MEMORANDUM OPINION AND ORDER**

George R. Grant, Lois A. Grant, and the Grant Family Trust bring this action *pro se* against David Askanase, Trustee of the Advent Trust Company bankruptcy, seeking funds the Grants allege Askanase is wrongfully withholding.  Pending before the court is Askanase's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (Docket Entry No. 5).  For the reasons explained below, the court will deny the motion as moot and dismiss the action without prejudice for lack of subject-matter jurisdiction.

I.  **Factual and Procedural Background**

A.  **Underlying Facts**

On September 30, 1998, plaintiff George Grant purchased a long-term certificate of deposit (CD) for $70,000.[1]  The CD was to

_____

[1]Request for Return of Funds Illegally Held by David Askanase ("Plaintiffs' Request"), Docket Entry No. 1, p. 1; Liquidating Trustee's Complaint for Turnover and Recovery of Funds, Docket Entry No. 1 in Adversary Case 05-3020, ¶ 10.

be held on deposit at International Finance Bank ("IFB"), with Advent Trust Company acting as the CD's custodian. The Grants and Askanase do not dispute that in early 2000, before the CD had matured, George Grant requested the withdrawal of the funds, and that the party responsible for distributing the funds to him inadvertently included an amount from another investor's CD account.[2]

In 2001 Advent Trust Company ("Advent") filed for Chapter 11 bankruptcy and Askanase was eventually appointed liquidating trustee.[3] Grant claims that the amount distributed to him from his CD account, even including the funds that apparently did not belong to him, was "short of the amount required by the CD Contract" and that Askanase, acting as Advent's trustee, caused this deficiency.[4]

**B.   Askanase's Adversary Proceeding Against the Grants**

On January 10, 2005, Askanase filed an adversary proceeding against the Grants and IFB, demanding they turn over to Advent $7,359.47, the amount from the other investor's CD account that Askanase claimed was distributed erroneously to Grant.[5] Askanase

---

[2]See Plaintiffs' Request, Docket Entry No. 1, p. 1; Liquidating Trustee's Complaint for Turnover and Recovery of Funds, Docket Entry No. 1 in Adversary Case 05-3020, ¶¶ 12-13.

[3]Voluntary Petition, Docket Entry No. 1 in 4:01-bk-31417, p. 1.; Notice of Intent to Pay Liquidating Trustee's Fees & Expenses, Docket Entry No. 270 in 4:01-bk-31417, p. 1.

[4]Plaintiffs' Request, Docket Entry No. 1, p. 1.

[5]Liquidating Trustee's Complaint for Turnover and Recovery of Funds, Docket Entry No. 1 in Adversary Case 05-3020, ¶¶ 10-18.

did not "accuse Grant of any improper action in acquiring the [funds from another CD account,]" but rather claimed the mistake was the "result of hurried activity by the brokers."[6]  Askanase sought recovery from the party who had possession of the erroneously distributed funds, whether it was IFB or the Grants.[7] The complaint made clear that the "only issue" was "to recover funds which belong to another Advent investor" and that "Askanase [had] no interest and [took] no position about any issues between Grant and the Bank about the amount Grant may or may not be entitled to."[8]

On August 5, 2005, Askanase moved for summary judgment against the Grants.[9]  Askanase's motion asked the court to award the erroneously distributed amount ($5,449.28 plus interest) as well as attorneys' fees in the amount of $8,706.50.[10]  Attached to the motion was a three-page proposed order containing references to both the turnover amount and the attorneys' fees, including an order for the Grants to pay "attorneys' fees reasonably incurred by

---

[6]<u>Id.</u> ¶ 21.

[7]<u>Id.</u> ¶¶ 22-23.

[8]<u>Id.</u> ¶ 24.

[9]Plaintiff Liquidating Trustee's Motion for Summary Judgment and/or Default Judgment Against Grant Defendants and Motion to Dismiss Defendant International Finance Bank ("Plaintiffs' Motion for Summary Judgment"), Docket Entry No. 13 in Adversary Case 05-3020, p. 1, 7.

[10]<u>Id.</u> at 6-7.

the Plaintiffs' attorneys, in the amount of $8,706.50."[11]   As a proposed order, and not an actual order, the last page left a blank signature line for the judge and made clear it was "approved and submitted" by Ann Zeigler, Askanase's counsel.[12]   Zeigler certified that she served a copy of the motion and its attachments on the Grants by certified mail.[13]

Attached to Plaintiffs' Request are copies of two checks showing that seven days later, on August 12, 2005, Grant issued two payments on behalf of the Grant Family Trust to David Askanase—one for $5,449.28 and the other for $8,706.50.[14]   Grant asserts that "the court found the amount to be $5,449.28 including an additional amount for interest" and that he "immediately obeyed the court [sic] decision and sent the court ordered $5,449.28."[15]   There is no record of such an order before the court.   Grant alleges that Askanase deposited the $8,706.50 check for attorneys' fees on

---

[11]Summary Judgment in Favor of Plaintiff Trustee Against Defendants George R. Grant, Lois A. Grant and Grant Family Trust, and Dismissal With Prejudice of Defendant International Finance Bank, Exhibit No. 4 to Plaintiffs' Motion for Summary Judgment, Docket Entry No. 13 in Adversary Case 05-3020, p. 2.

[12]Id. at 3.

[13]Plaintiffs' Motion for Summary Judgment, Docket Entry No. 13 in Adversary Case 05-3020, p. 8.

[14]Official Check #305236429 and Official Check #305236430, Attachment 27 to Plaintiffs' Request, Docket Entry No. 1, p. 1.

[15]Plaintiffs' Request, Docket Entry No. 1, p. 2.

August 19, 2005, and has attached a deposit slip to his complaint supporting this assertion.[16]

After having allegedly received both of these payments, Askanase moved to withdraw his motion for summary judgment and dismiss the adversary proceeding, stating that on "August 18, 2005, [Askanase] received payment from the Grant Defendants of the required amount."[17]   The motion does not specify the amount received.

On August 24, 2005, the bankruptcy court entered an order granting the motion to withdraw Askanase's motion for summary judgment and dismissing the adversary proceeding.[18]   The order acknowledged that Askanase's motion was "based on payment received from the Grant Defendants," but the order, just like Askanase's motion, did not specify the amount received.[19]   The court ordered that the "Adversary Proceeding is dismissed, with each party to pay its own costs," and that "all relief not granted herein is denied."[20]   Grant alleges that he paid the $8,706.50 in attorneys'

---

[16]Deposit Form, Attachment No. 29 to Plaintiffs' Request, Docket Entry No. 1, p. 1.

[17]Motion to Withdraw Document, Docket Entry No. 14 in Adversary Case 05-3020, p. 3.

[18]Order Granting Plaintiff Trustee's Motion to Withdraw Motion for Summary Judgment and to Dismiss Adversary Proceeding, Docket Entry No. 15 in Adversary Case 05-3020.

[19]Id. at 1.

[20]Id. at 2.

fees even though the court's order did not include an award for attorneys' fees.[21]

## C.   Grant's Efforts to Retrieve $8,706.50 from Askanase

Grant has exerted considerable effort attempting to recover from Askanase the $8,706.50 he claims Askanase unjustly possesses. Grant first alleges that "several attempts to have [Askanase] 'pay its own costs' were rebuffed on procedural grounds by the Bankruptcy Court."[22]  On August 31, 2005, Grant filed a Motion to Assign Court Costs to the Responsible Party with the bankruptcy court.  He did not argue that he had mistakenly paid $8,706.50 in attorneys' fees, but he requested "that the court costs be paid by Advent Trust."[23]  The motion was denied without prejudice because Grant failed to provide a separate form of order pursuant to the local rules.[24]   Grant then filed a Motion to Apply Local Rule 1001(d) Sua Sponte with the bankruptcy court.[25]  The bankruptcy

---

[21]Official Check #305236430, Attachment 27 to Plaintiffs' Request, Docket Entry No. 1, p. 1; Order Granting Plaintiff Trustee's Motion to Withdraw Motion for Summary Judgment and to Dismiss Adversary Proceeding, Docket Entry No. 15 in Adversary Case 05-3020, p. 2.

[22]Plaintiffs' Request, Docket Entry No. 1, p. 2.

[23]Motion to Assign Court Costs to the Respons [sic] Party, Docket Entry No. 333 in 4:01-bk-31417, p. 2.

[24]Order Denying Without Prejudice Motions for Non-Compliance with Local Rules, Docket Entry No. 334 in 4:01-bk-31417, p. 1.

[25]Motion to Apply Local Rule 1001(d) Sau [sic] Sponte, Docket Entry No. 17 in Adversary Case 05-3020, p. 1.

court denied Grant's motion because there was no separate form of order, as required under the local rules, and because the adversary proceeding was already dismissed.[26]

In January of 2006 Grant filed a notice of appeal of the bankruptcy court's order.  The appeal was docketed under Civil Action No. H-06-0119 and was assigned to Judge Nancy F. Atlas. Grant's brief in support of the appeal generally explained the history leading up to the erroneous distribution, but made no mention of the $8,706.50 he claims he paid by mistake.[27]  He merely stated, "I pray that the rules of contract law be applied to assign costs to the responsible party."[28]  Attached to his brief was the record of the bankruptcy adversary proceeding.[29]  Judge Atlas, pursuant to Federal Rule of Bankruptcy Procedure 8006, ordered Grant to file a designation of items to be included in the appellate record and a statement of issues to be presented.  Grant responded with the following statement:

> "The items submitted with the appeal should be included
> as a record.  This is a single issue appeal.  The
> documented record does not support the penalty of the
> Grant Trust as in any way the responsible party."[30]

---

[26]Order Denying Motion to Apply Local Rule 1001(d), Docket Entry No. 18 in Adversary Case 05-3020, p. 1.

[27]Appeal Brief, Docket Entry No. 6 in 4:06-cv-0119, pp. 1-2.

[28]Id. at 2.

[29]Id. at 4-23.

[30]Order, Docket Entry No. 5 in 4:06-cv-0119, p. 1; Statement of Issues on Appeal, Docket Entry No. 7 in 4:06-cv-0119, p. 1.

Judge Atlas dismissed the appeal on February 27, 2006, without prejudice, on the grounds there was no "clear statement of issues on appeal" or "any explanation regarding what the Grant Trust [sought] to appeal."[31]  Grant then filed a letter with the district court requesting that Judge Atlas order Hughes, Watters, & Askanase to return the $8,706.50 he had sent to them "by mistake."[32]  Judge Atlas denied the request without prejudice on July 24, 2006, because no request had been made to reinstate the appeal and because Grant had not presented his request to the bankruptcy court.[33]

Grant also wrote a letter to Askanase directly asking for the return of the $8,706.50 that he paid by mistake.  In the letter, postmarked April 5, 2006, Grant stated that "[b]ased upon the Order issued by United States Bankruptcy Judge Letitia Z. Clark, . . . 'that this Adversary Proceeding is dismissed, with each party to pay its own costs,' I am requesting that Hughes, Waters [sic] & Askanase pay their 'own costs' and return the $8,706.50 sent to them by the Grant Trust by mistake."[34]  Askanase's response letter to Grant claimed that the "amount was voluntarily

---

[31]Dismissal Order, Docket Entry No. 10 in 4:06-cv-0119, p. 1.

[32]Request, Docket Entry No. 12 in 4:06-cv-0119, p. 1.

[33]Order, Docket Entry No. 14 in 4:06-cv-0119, p. 1.

[34]Letter from George Grant to David Askanase, Attachment 4(1) to Plaintiffs' Request, Docket Entry No. 1, p. 2; Letter by Ann Zeigler to George Grant, Attachment 6 to Plaintiffs' Request, Docket Entry No. 1, p. 1.

paid by [Grant] prior to [his] numerous additional motions and appeal to the district court."[35]

On June 14, 2007, Grant filed two motions—one with the district court and one with the bankruptcy court—to enforce the bankruptcy court's August 24, 2005, order that each party pay its own costs.[36]  Grant explained that the bankruptcy court's order stated that each party would pay its own costs and that all relief not included in the order was denied.[37]  He claimed Askanase ignored that order.[38]  He asked that the court "direct the Trustee to obey the existing court order and pay the $8,706.50."[39]  Grant did not plead that the $8,706.50 was paid to Askanase by mistake.  Nor did he attach any documents showing that he had paid Askanase for his attorneys' fees.

Judge Atlas denied the request without prejudice on August 1, 2007, explaining that his request for relief should be "properly directed first to the Bankruptcy Court and not to this Court."[40]

---

[35]Letter from Ann Zeigler to George Grant, Attachment 6 to Plaintiffs' Request, Docket Entry No. 1, p. 1.

[36]Motion to Require Court's Order to Be Obeyed, Docket Entry No. 16 in 4:06-cv-0119, p. 1; Motion that the Court Ruling Be Obeyed, Docket Entry No. 25 in Adversary Case 05-3020, p. 1.

[37]Motion that the Court Ruling Be Obeyed, Docket Entry No. 25 in Adversary Case 05-3020, p. 6.

[38]Id.

[39]Id.

[40]Motion to Require Court's Order to Be Obeyed, Docket Entry No. 16 in 4:06-cv-0119, p. 1; Order, Docket Entry No. 19 in 4:06-cv-0119, p. 1.

The bankruptcy court also denied Grant's motion, on August 13, 2007, stating that the motion "requests relief that has been previously addressed in an order of this court, and has not been appealed."[41]

On September 13, 2007, Grant appealed the bankruptcy court's August 13, 2007, order.[42] Grant's Brief asked the court to "direct the Trustee to return the $8,706.50 taken from the Grant Trust."[43] Grant did not include any evidence that he sent Askanase a check for $8,706.50 in August of 2005 or that Askanase had deposited the check. Judge Atlas affirmed the bankruptcy court's order and dismissed the appeal on October 4, 2007.[44] In her order, Judge Atlas stated:

> "There is nothing in the record on appeal, or in the records of Bankruptcy Proceeding 01-31417 or Adversary Case 05-3020, to indicate that Appellant was ever ordered to pay the Trustee attorneys' fees in the amount of $8,706.50 or in any other amount. There is no evidence in the record to show that Appellant paid that amount to the Trustee. The Bankruptcy Court's order that each party was to 'pay its own costs' indicates only that the Bankruptcy Court did not require any party to pay the costs incurred by any other party. The order does not require Appellant to pay anything more to the Trustee, and it does not require the Trustee to pay anything to Appellant."[45]

_____

[41]Order, Docket Entry No. 27 in Adversary Case 05-3020, p. 1.

[42]Notice of Filing of an Appeal Under Bankruptcy Rule 8004, Docket Entry No. 1 in 4:07-cv-2954.

[43]Appeal of Bankruptcy Court Order 8/13/07, Attachment 12 to Plaintiffs' Request, Docket Entry No. 1, p. 4.

[44]Memorandum and Order, Docket Entry No. 5 in 4:07-cv-2954, p. 1.

[45]Id. at 3-4.

After writing several request letters to various government officials asking for their help, Grant initiated the present action on November 25, 2009, by filing a "Request for Return of Funds Illegally Held by David Askanase."[46]   Much of the request is comprised of the same arguments Grant made in other cases.   He reminds the court of the bankruptcy order stating that each party should pay its own costs and that all relief not granted was denied.[47]   Grant explains that Askanase has refused to return the $8,706.50.[48]   Grant also mentions Judge Atlas's Memorandum and Order from October 4, 2007, which noted the absence of any evidence showing that Grant had ever paid Askanase $8,706.50.[49]   Grant asserts that "now the court has this evidence with this filing," and he has attached a check and deposit slip showing that the attorneys'-fees transaction indeed occurred.[50]   He further argues that Askanase "has had possession of $8,706.50 that is not legally his since 8/19/2005" and that "he has unjustly reaped benefits from controlling this $8,706.50."[51]   Grant asks the court to order the

---

[46]Plaintiffs' Request, Docket Entry No. 1.

[47]Id. at 2.

[48]Id. at 3.

[49]Id.

[50]Id.; Attachments 27 & 29 to Plaintiffs' Request, Docket Entry No. 1.

[51]Plaintiffs' Request, Docket Entry No. 1, p. 4.

return of the $8,706.50, plus interest and various court costs Grant has incurred attempting to retrieve the money.[52]

**D.  Askanase's Communications with Grant Concerning the $8,706.50**

In his April 12, 2006 letter, Askanase, through his attorney, does not deny that he received and deposited a check from the Grant Trust for $8,706.50.  The letter states that the "amount was voluntarily paid by [Grant] prior to [his] numerous additional motions and appeal to the district court."[53]  With respect to the bankruptcy order ordering each party to pay its own costs, Askanase told Grant that "costs" meant any "additional legal fees" for "the additional activity required after you paid the settlement amount."[54]  The letter states that had Grant "not paid the settle-ment amount, the Trustee would not have dismissed the [adversary proceeding] against [him]."[55]

In December of 2006 Askanase, through counsel, sent a letter to Grant stating:

> These are the facts: your family trust received money which belonged to another Advent investor.  Despite repeated requests and demands, you refused to return the funds, and the Liquidating Trustee finally had to sue you to get the money for the other investor.  In connection

---

[52]_Id._ at 4-5.

[53]Letter from Ann Zeigler to George Grant, Attachment 6 to Plaintiffs' Request, Docket Entry No. 1, p. 1.

[54]_Id._

[55]_Id._

-12-

with that, the Bankruptcy Court awarded the Liquidating Trustee his attorney's fees for that litigation in the bankruptcy court.  You thereupon appealed to the District Court.  Your appeal was summarily denied.[56]

**E.   Askanase's Response to the Present Action**

Askanase responded to Grant's present Request by filing a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) on April 28, 2010.[57]  The motion argues that because Grant's claim is precluded by *res judicata*, or alternatively, by collateral estoppel, Grant has failed to state a claim upon which relief can be granted.[58]

## II.  <u>Jurisdictional Analysis</u>

Essentially, Grant's "Request" argues the following: Askanase refuses to return the $8,706.50 Grant mistakenly paid him on August 12, 2005, and this refusal is in violation of the bankruptcy court's dismissal order of August 24, 2005, that specifically mandated each party to pay its own costs.  Because of the abundance of requests, briefs, and appeals Grant has filed in various courts in the Southern District, the court finds it necessary to address whether subject-matter jurisdiction exists in the present action before it addresses Askanase's 12(b)(6) arguments.

---

[56]Letter from Ann Zeigler to George Grant, Attachment to Supplemental Brief, Docket Entry No. 2 in 4:07-cv-2954, p. 1.

[57]Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), Docket Entry No. 5.

[58]<u>Id.</u> at 1-6.

A.    **Subject-Matter Jurisdiction Generally**

Federal district courts are courts of limited jurisdiction. Consequently, a question about subject-matter jurisdiction may be presented at any time by any party or *sua sponte* by the court; and the action should be dismissed upon determination that subject-matter jurisdiction is lacking.  FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action".).  <u>See Giannakos v. M/V Bravo Trader</u>, 762 F.2d 1295, 1297 (5th Cir. 1985) ("United States District Courts . . . have the responsibility to consider the question of subject matter jurisdiction *sua sponte* if it is not raised by the parties and to dismiss any action if such jurisdiction is lacking.").

Subject-matter jurisdiction may be found based upon (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.  <u>Ramming v. United States</u>, 281 F.3d 158, 161 (5th Cir. 2001).

Although courts are lenient in interpreting *pro se* litigants' pleadings, Grant must nevertheless allege a claim that falls within this court's jurisdiction.  His initial filing is titled, "Request for Return of Funds Illegally Held by David Askanase."  Because of the unconventional format with which Grant initiates this action, the court will examine Plaintiffs' Request through several

-14-

different lenses, determining in each instance whether subject-matter jurisdiction exists.

**B.   Subject-Matter Jurisdiction Over an Appeal**

Plaintiffs' Request could be characterized as an appeal, either from a bankruptcy court order or the district court's order affirming the bankruptcy court's order.  The caption to Plaintiffs' Request lists two prior bankruptcy proceedings, and the bankruptcy court's orders concerning Grant's previous demands for a return of funds are mentioned frequently throughout Plaintiffs' Request.[59]

If Plaintiffs' Request is an appeal from a bankruptcy order to this court, it would have to comply with the Federal Rules of Bankruptcy Procedure, which govern the manner and timing of such appeals.  FED. R. BANKR. P. 8001–10.  The record is devoid of any evidence that plaintiffs filed a notice of appeal in the bankruptcy court for an appeal to this court, see id. at 8001(a), 8003(b); and the time for an appeal has long expired, see id. at 8002(a), (c).  Thus, this court does not have subject-matter jurisdiction in its capacity as an appellate court in a bankruptcy case.[60]

Similarly, if plaintiffs are appealing Judge Atlas's order from October 4, 2007, which affirmed the bankruptcy court's ruling

---

[59]See Plaintiffs' Request, Docket Entry No. 1, pp. 1–2, 4–5.

[60]In addition, no evidence suggests Grant has sought certification for an appeal from the bankruptcy court to the circuit court, FED. R. BANKR. P. 8001(f), which would require plaintiffs to follow a different set of procedures.  See In re Scotia Pacific Co., 508 F.3d 214, 219 (5th Cir. 2007).

-15-

concerning their demand for $8,706.50, this court lacks subject-matter jurisdiction because such an appeal must be filed with the court of appeals.  28 U.S.C. § 158(c)(2), 158(d).

## C.  Diversity Jurisdiction

Plaintiffs' Request could also be characterized as a claim to recover damages for Askanase's wrongful withholding of the attorneys' fees plaintiffs mistakenly paid.  Plaintiffs argue that Askanase has "unjustly reaped benefits from controlling this $8,706.50."

28 U.S.C. § 1332(a)(1) provides that "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States." While the diversity-of-citizenship requirement is apparently satisfied here—Grant is domiciled in California while Askanase is domiciled in Texas[61]—the amount-in-controversy requirement is not. The amount pleaded in Plaintiffs' Request—$8,706.50, trebled plus interest—falls well below the $75,000 threshold.

## D.  Federal-Question Jurisdiction

### 1.  Federal-Question Jurisdiction Generally

Grant's articulation of Askanase's alleged misconduct and his stated claim against Askanase do not invoke general federal-question jurisdiction as defined by 28 U.S.C. § 1331 ("The district

_____

[61]Plaintiffs' Request, Docket Entry No. 1, p. 5; Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), Docket Entry No. 5, p.7.

-16-

courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). After explaining his reasons for demanding compensation from Askanase, Grant merely quotes from an uncited "Common Law Civil Code" to define "unjust enrichment."[62]

### 2.    Federal-Question Jurisdiction Under 28 U.S.C. § 1334

The court also must consider, however, whether Grant's Request falls within one of the particular classes of federal-question cases over which Congress has granted original jurisdiction to district courts. Specifically, since the attorneys' fees at issue stem from a bankruptcy proceeding, the court must determine whether jurisdiction exists through 28 U.S.C. § 1334.

28 U.S.C. § 1334 establishes the scope of jurisdiction for district courts adjudicating bankruptcy cases. As the Fifth Circuit explained in In re Wood, 825 F.2d 90 (5th Cir. 1987), Section 1334 provides four categories of bankruptcy matters over which a federal district court has jurisdiction: (1) cases under Title 11, (2) proceedings arising under Title 11, (3) proceedings arising in a case under Title 11, and (4) proceedings related to a case under Title 11. Id. at 92.[63] As in In re Wood, the first

---

[62]Plaintiffs' Request, Docket Entry No. 1, p. 4.

[63]28 U.S.C. § 1334(a) states that "the district courts shall have *original and exclusive* jurisdiction of all cases under title 11," while § 1334(b) provides that "the district courts shall have *original but not exclusive* jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11" (emphasis added).

-17-

category is not applicable because it pertains to the bankruptcy petition itself.  Id.  The definitions of the remaining three categories, however, are a bit more convoluted.

For cases in which the bankruptcy proceeding is still pending, the Fifth Circuit has offered the following rationale:  Because the definitional phrases "arising under," "arising in a case under," and "related to a case under" operate conjunctively, "it is necessary only to determine whether a matter is at least 'related to' the bankruptcy."  Id. at 93; In re Querner, 7 F.3d 1199, 1201 (5th Cir. 1993).  For these pending cases, the Fifth Circuit has defined "related to" as "whether the outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy."  In re Wood, 825 F.2d at 93.  More specifically, as it applies to an adversary proceeding (from which Grant's payment to Askanase arose), the Fifth Circuit has stated "related to" means the proceeding's outcome may "both (1) alter the rights, obligations, and choices of action of the debtor, and (2) have an effect on the administration of the estate."  In re Cano, 410 B.R. 506, 545 (Bankr. S.D. Tex. 2009) (citing Bass v. Denney (In re Bass), 171 F.3d 1016, 1022 (5th Cir. 1999).

Since the final decree from Advent's bankruptcy was entered on July 30, 2007, over two years ago (Docket Entry No. 383 in 4:01-bk-31417), and since the appeal of the adversary proceeding was dismissed in October of 2007 (Docket Entry No. 29 in Adversary Case

05-3020), the court concludes that Grant's Request cannot be "related to" the bankruptcy proceeding.

The terms "arising under" and "arising in" have less clear boundaries. The Fifth Circuit has declared that a matter "arising under" Title 11 "invokes a substantive right provided by title 11," In re Southmark, 163 F.3d 925, 930 (5th Cir. 1999), and a matter "arising in" a case under Title 11 "by its nature, could arise only in the context of a bankruptcy case." In re Wood, 825 F.2d at 97.

Courts have occasionally used the phrases "arising in" and "arising under" to exercise jurisdiction over proceedings that take place after the primary bankruptcy case is closed. But in those situations the proceedings were pending before the same court that adjudicated the primary bankruptcy case, and they involved matters that had a significant relationship to the outcome of the bankruptcy case. See In re Nat'l Gypsum Co., 118 F.3d 1056, 1064 (5th Cir. 1997) (holding that a bankruptcy court had jurisdiction, after the bankruptcy proceeding was closed, to adjudicate a subsequent dispute concerning allegations that the defendant had violated that court's discharge injunction, confirmed plan, and confirmation order); In re Craig's Stores of Tex., Inc., 266 F.3d 388, 390 (5th Cir. 2001) (holding that bankruptcy courts retain subject-matter jurisdiction over a discharged debtor with respect to "matters pertaining to the implementation of the plan"); In re Cano, 410 B.R. 506, 549 (Bankr. S.D. Tex. 2009) (finding that a bankruptcy court had jurisdiction over proceedings alleging

-19-

violations of a confirmed plan stemming from a bankruptcy
proceeding in front of the same court).  Similarly, in <u>Travelers</u>
<u>Indemnity v. Bailey</u>, --- U.S. ---, 129 S. Ct. 2195 (2009), the
Court held that after a bankruptcy petition has been discharged,
and even though the bankruptcy case was closed and the present
claims would not affect the bankruptcy estate, a bankruptcy court
has "jurisdiction to interpret and enforce its own prior orders."
<u>Id.</u> at 2205.

Here, the facts underlying Plaintiffs' Request originated from
a bankruptcy-court order, but the connection between the attorneys'
fees Grant allegedly paid by mistake to Askanase and the bankruptcy
proceeding itself is too attenuated for this court to conclude that
jurisdiction exists under Section 1334.  The original bankruptcy
proceeding was closed more than two years before Grant filed this
action, and Grant was not a creditor in that bankruptcy
proceeding.[64]  Grant was merely a defendant in an adversary
proceeding that was eventually dismissed without prejudice at the
request of Askanase.  The fact that Grant allegedly mistakenly paid
attorneys' fees to Askanase in the adversary proceeding had no
effect on the administration of the bankruptcy estate.  The
attorneys' fees would not have been included in the estate, and
Askanase's misconduct, even if true, would have had no bearing on
the activities surrounding the estate's liquidation.  Moreover, if

---

[64]<u>See</u> Receipt of Creditors List, Docket Entry No. 34 in Case
01-31417, pp. 1-6.

subject-matter jurisdiction were to exist under Section 1334, it would exist not in this court but in the bankruptcy court that adjudicated the adversary proceeding.

       3.   <u>Federal-Question Jurisdiction Under the Federal Rules of Civil Procedure</u>

Grant has not referred to the federal rules in Plaintiffs' Request or in any supporting documents, but even were the court *sua sponte* to consider Plaintiffs' Request as a motion for relief under Federal Rule of Civil Procedure 60, the court would not have subject-matter jurisdiction.  The fact that a party has asked a court to enforce a Federal Rule of Civil Procedure does not mean the case arises under federal law for purposes of 28 U.S.C. § 1331. 13D Charles Alan Wright, et al., <u>Federal Practice and Procedure</u> § 3563 (3d. ed. 2008); <u>see Port Drum Co. v. Umphrey</u>, 852 F.2d 148 (5th Cir. 1988) (finding that a civil-procedure rule does not provide a basis for federal-question jurisdiction).  Relief under Rule 60, if any is possible under Grant's circumstances, should be sought in the original bankruptcy court or before Judge Atlas.[65]

**E.   Askanase's 12(b)(6) Motion to Dismiss**

Askanase moves to dismiss under Federal Rule of Civil Procedure 12(b)(6) on the grounds that the doctrine of *res judicata* precludes Grant from being able to state a claim upon which relief

---

[65]The court strongly urges Grant to obtain the services of an attorney if he decides to press onward.

may be granted.  The Fifth Circuit has ruled that a *res judicata* assertion in a motion to dismiss is sufficient to raise the defense.  <u>Terrell v. DeConna</u>, 877 F.2d 1267, 1270 (5th Cir. 1989).

Because the court concludes it lacks subject-matter jurisdiction over this action, it is unnecessary to decide Askanase's claim- and issue-preclusion defenses.  <u>See Steel Co. v. Citizens for a Better Environment</u>, 523 U.S. 83, 118 S. Ct. 1003, 1012 (1998) ("'Without jurisdiction the court cannot proceed at all in any cause.  Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.") (quoting <u>Ex parte McCardle</u>, 7 Wall. 506, 514, 19 L. Ed. 264 (1868)); <u>Bell v. Hood</u>, 327 U.S. 678, 66 S. Ct. 773, 776 (1946) ("Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy."); <u>Menchaca v. Chrysler Credit Corp.</u>, 613 F.2d 507, 512 (5th Cir. 1980) ("If the allegations do not survive the jurisdictional attack, then there is no jurisdiction even to consider the other claims, much less to entertain a Rule 12(b)(6) motion to dismiss those claims.").  Furthermore, the Supreme Court disapproves of courts that employ the "doctrine of hypothetical jurisdiction" to assume jurisdiction for the purpose of deciding the merits.  <u>Steel Co.</u>, 118 S. Ct. at 1012.

### III.  <u>Order</u>

For the reasons explained above, Plaintiffs' Request for Return of Funds Illegally Held by David Askanase (Docket Entry No. 1) will be dismissed for lack of subject-matter jurisdiction, and Askanase's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (Docket Entry No. 5) is **DENIED** as moot.

**SIGNED** at Houston, Texas, on this 24th day of September, 2010.

SIM LAKE
UNITED STATES DISTRICT JUDGE